J-A02020-23
J-A02030-23

2023 PA Super 250

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| v. | : | |
| | : | |
| ELLIOTT MORRISON CRENSHAW, JR. | : | |
| | : | |
| Appellant | : | No. 49 WDA 2022 |

Appeal from the Judgment of Sentence Entered December 8, 2021
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0002820-2020

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| v. | : | |
| | : | |
| KEVIN RAY MCBRIDE | : | |
| | : | |
| Appellant | : | No. 46 WDA 2022 |

Appeal from the Judgment of Sentence Entered December 8, 2021
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0008685-2020

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| v. | : | |
| | : | |
| KEVIN RAY MCBRIDE | : | |
| | : | |
| Appellant | : | No. 50 WDA 2022 |

J-A02020-23
J-A02030-23

Appeal from the Judgment of Sentence Entered December 8, 2021
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0007367-2020

BEFORE:   BOWES, J., MURRAY, J., and PELLEGRINI, J.[*]

OPINION BY BOWES, J.:                    **FILED:  December 1, 2023**

These unrelated appeals by Elliott Morrison Crenshaw, Jr., and Kevin Ray McBride (collectively "Appellants") were taken from their respective judgments of sentence imposed after they were convicted pursuant to 18 Pa.C.S. § 4915.2(1)(a) for failing to comply with the provisions of Subchapter I of Pennsylvania's Sexual Offender Registration and Notification Act ("SORNA"), 42 Pa.C.S. §§ 9799.51-9799.75.[1]  Both appeals present the same legal issue:  whether Appellants' convictions pursuant to the North Carolina statute proscribing taking indecent liberties with children obligated them to register under Subchapter I of SORNA.  Following careful review of the implicated statutes in light of the applicable law, we are constrained to hold that Appellants had no duty to register in Pennsylvania.  Accordingly, we vacate their judgments of sentence, reverse their convictions, and discharge them.

---

[*]  Retired Senior Judge assigned to the Superior Court.

[1] For the sake of brevity, in discussing statutes within Subchapter I, we hereafter omit the initial "9799." and reference only the number that follows the decimal point.  For example, rather than repeatedly stating "§ 9799.55" and "§ 9799.56," we shall refer to those provisions as "§ 55" and "§ 56."

- 2 -

I.      **Facts and Procedural History**

We glean the relevant factual and procedural history of these cases from the certified records, particularly from the affidavits of probable cause and Megan's Law packets compiled by the respective law enforcement agencies in the underlying cases.[2]

A.      **Crenshaw**

Crenshaw committed the offense of taking indecent liberties with children in North Carolina on July 30, 1993.  ***See*** N.C.G.S. § 14-202.1(a) (defining conduct that is prohibited with children under the age of sixteen if the perpetrator is at least five years older than the child, as discussed more fully *infra*).  He was sentenced in September 1994 to three to ten years of imprisonment.[3]  ***See*** N.T. Trial (Crenshaw), 12/8/21, at 7 (Commonwealth Exhibit 2).  Upon release in September 2002, Crenshaw became subject to North Carolina's thirty-year sexual offender registration requirement.  ***See*** N.C.G.S. §§ 14-208.6(4)(a), (5) (defining taking indecent liberties with children as a sexually violent offense that results in a reportable conviction); 14-208.7(a) (mandating that a resident with a reportable conviction register immediately upon release from confinement and maintain registration for at

_____

[2] The parties stipulated to the factual averments contained within the affidavits of probable cause and Megan's Law packets.  ***See*** N.T. Trial (Crenshaw), 12/8/21, at 7; N.T. Trial (McBride), 12/8/21, at 7-8.  Thus, the underlying facts in these matters are undisputed.

[3] Crenshaw was not found to be a sexually violent predator ("SVP").  ***See*** Commonwealth's Exhibit 1 (Out of State Registration/Tier Form, 5/11/18).

least thirty years unless successfully petitioning to shorten the period); 14-208.10 (identifying registration information regarding offenders that is available for public inspection). *See also* Commonwealth's Exhibit 1 (Out-of-State Registration Questions, 12/20/10).

Crenshaw subsequently relocated to Pennsylvania and first registered here in 2011 while housed as an inmate at the Allegheny County Jail. *See* Commonwealth's Exhibit 1 (Pennsylvania State Police ("PSP") Megan's Law Section Offender Court Information at 6). In 2019, the Allegheny County Sheriff's Office began investigating non-compliant sex-offenders, including Crenshaw, who last registered in 2017. In January 2020, Crenshaw was charged for failing to register in 2018 and 2019. Crenshaw filed an omnibus pretrial motion seeking to dismiss the charges on the basis that § 4915.2(1)(a), which criminalizes the failure to comply with Subchapter I of SORNA, did not apply to him. The trial court denied the motion, Crenshaw elected to proceed to a trial without a jury, and the trial court found him guilty and sentenced him to two years of probation and eighteen months of electronic monitoring. This timely appeal followed, and both Crenshaw and the trial court complied with Pa.R.A.P. 1925.

### B.    McBride

In May 2011, McBride was convicted pursuant to North Carolina's § 14-202.1(a) for taking indecent liberties with children earlier that year, sentenced to nineteen to twenty-three months of imprisonment, and, like Crenshaw, required to register for a thirty-year period under the North Carolina law

referenced above. In August 2014, McBride moved to Pennsylvania and began to register as a sexual offender. He was initially registered at an address in Clairton, Pennsylvania, but in September 2020, deputies of the Allegheny County Sheriff's Office conducted a compliance check and discovered that McBride had vacated the property without reporting his change in circumstances to PSP.

At Case No. 7367, McBride was charged with a violation of § 4915.2(1)(a) for failing to report his change in address. Three days later, McBride was arrested in connection with this charge and incarcerated at the Allegheny County Jail. On September 23, 2020, McBride's registered address was changed to the Allegheny County Jail. He was released from confinement on the same day. On November 2, 2020, detectives of the Pittsburgh Police Department determined that McBride had not updated his residency information following his release from jail. At Case No. 8685, McBride was charged with a second violation of § 4915.2(1)(a).

His two cases were consolidated in the trial court[4] and McBride filed an omnibus pretrial motion asserting that the charges should be dismissed because he was not subject to registration under Subchapter I. The trial court denied this motion and the case proceeded to a non-jury trial at which McBride was found guilty in both cases and sentenced to an aggregate term of one year of probation. McBride filed a timely notice of appeal in each case, and

_____

[4] Both Crenshaw and McBride were tried by the same judge.

both he and the trial court complied with their respective obligations pursuant to Pa.R.A.P. 1925.  This Court consolidated the appeals *sua sponte*.

### C.    Appellate Procedural History

Appellants' appeals were assigned to the instant panel on January 24, 2023.  The issue briefed by the parties was whether, applying the general rules of statutory construction, the North Carolina offense was similar to a Pennsylvania offense enumerated in Subchapter I such that Appellants were required to register here.  We initially concluded that sufficient similarity existed in a non-precedential decision filed on June 20, 2023.  Appellants filed timely applications for panel reconsideration or *en banc* reargument, asserting for the first time that the framework for the similarity analysis adopted by our Supreme Court in **A.L. v. Pennsylvania State Police**, 274 A.3d 1228 (Pa. 2022), controlled and mandated a different result.  On August 15, 2023, we granted panel reconsideration, withdrew our prior decision, and ordered the parties to submit new briefs discussing **A.L.** in connection with these cases. The parties filed their respective briefs, and these appeals are again ripe for adjudication.

## II.    Issue and Applicable Law

Appellants raise the following identical issue for our consideration:

> Where Subchapter I of SORNA does not apply to [Appellants'] conviction[s] from North Carolina for indecent liberties with children because it was not "similar" under §§ 9799.55 and 9799.56 to Pennsylvania's indecent assault statute, was the trial court required to grant [their] motion[s] to dismiss?

Put another way, where an out-of-state statute is sufficiently different from Pennsylvania's or, at the very least, is ambiguous, does Subchapter I **not** compel registration, particularly in light of the rule of lenity?

McBride's brief at 5 (cleaned up, emphasis in original); Crenshaw's brief at 4.[5]

Since this is a question of statutory interpretation, our standard of review is *de novo* and our scope of review is plenary. *See Commonwealth v. Finnecy*, 249 A.3d 903, 913 (Pa. 2021). "The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. § 1921(a). "The plain language of the statute is the best indicator of the legislature's intent. To ascertain the plain meaning, we consider the operative statutory language in context and give words and phrases their common and approved usage." *Commonwealth v. Chesapeake Energy Corp.*, 247 A.3d 934, 942 (Pa. 2021).

Further, we must give effect and ascribe meaning to each word and provision chosen by our legislature, assuming none is mere surplusage. *See*, *e.g.*, *Commonwealth v. McClelland*, 233 A.3d 717, 734 (Pa. 2020) ("Some meaning must be ascribed to every word in a statute . . . and there is a

_____

[5] Appellants are both represented by the Allegheny County Office of the Public Defender and raise the same appellate issue, resulting in briefs with nearly identical argument sections. We provide separate citations for each case where the briefs differ. A citation without designation of an Appellant indicates that the material is on the same page in both briefs. We also note that citations to the parties' briefs submitted after we granted panel reconsideration are designated as such, with other citations, such as the above, referring to their initial briefs.

presumption that disfavors interpreting language as mere surplusage."); 1 Pa.C.S. § 1921(a) ("Every statute shall be construed, if possible, to give effect to all its provisions."). Finally, "we are to assume that the General Assembly does not intend an absurd result to flow from the construction of any statute."

***Commonwealth v. Shiffler***, 879 A.2d 185, 194 (Pa. 2005).

### A.    Criminal Liability for Failure to Comply with Subchapter I's Reporting Requirements

Mindful of the above principles, we turn to the legislative enactments at issue. The criminal statute underlying Appellants' convictions provides as follows:

> An individual who is subject to registration under [§ 55](a), (a.1) or (b) (relating to registration) or who was subject to registration under former 42 Pa.C.S. § 9793 (relating to registration of certain offenders for ten years) commits an offense if the individual knowingly fails to:
>
> > (1) register with the Pennsylvania State Police as required under § [56] (relating to registration procedures and applicability);
> >
> > (2) verify the individual's residence or be photographed as required under § [60] (relating to verification of residence); or
> >
> > (3) provide accurate information when registering under § [56] or verifying a residence under § [60].

18 Pa.C.S. § 4915.2(a).

Thus, in order to convict Appellants for violating § 4915.2, the Commonwealth was required to prove three elements, namely that

Appellants: (1) were subject to registration under § 55[6] and (2) knowingly (3) either failed to follow a registration procedure specified in § 56 or § 60 or gave inaccurate information when they did follow the procedure. Appellants do not dispute that the Commonwealth established the second and third elements of § 4915.2(a). Their contention is that § 55 did not subject them to registration. Accordingly, we examine that provision of Subchapter I.

## B.     Subchapter I's Requirements

By way of background, Subchapter I of SORNA was enacted in 2018 to prescribe registration requirements for sexual offenders who, because they committed their offenses before December 20, 2012, could not be subject to the punitive requirements of the original version of SORNA that is now codified in Subchapter H.[7] Within Subchapter I, § 54 ("Applicability") indicates who must register, § 55 ("Registration") sets forth the offenses that trigger a reporting requirement, and § 56 ("Procedures and applicability") details the

---

[6] Since the former sex-offender law, codified at 42 Pa.C.S. § 9793, was repealed in 2000, before either Crenshaw or McBride began residing in Pennsylvania, it cannot be the basis for the first element of § 4915.2 in these cases.

[7] *See Commonwealth v. Lacombe*, 234 A.3d 602, 628 (Pa. 2020) (Wecht, J., concurring and dissenting) (explaining that, after our High Court ruled that retroactive application of SORNA constituted an *ex post facto* violation, the General Assembly "bifurcated SORNA within the Sentencing Code into two distinct subchapters: Subchapter H and Subchapter I. Subchapter H governs offenders whose triggering crimes were committed on or after December 20, 2012. Subchapter I applies retroactively to those whose offenses occurred before that date." (footnote omitted)).

timing and length of registration. All three statutes contain provisions specific to individuals whose offenses were committed outside of this Commonwealth.

In pertinent part, § 54 includes the following identification of individuals who must register:

> An individual who was convicted of an offense similar to an offense set forth in [§ 55] under the laws of . . . another state . . . and who, as of February 21, 2018, has not completed registration requirements. The period of registration shall be as set forth in [§ 56](b)(4) (relating to registration procedures and applicability) less any credit for time spent on a sexual offender registry of . . . another state . . . or with the Pennsylvania State Police prior to February 21, 2018.

42 Pa.C.S. § 9799.54(a)(4). In turn, § 55 provides as follows in relevant part:

> **(a) Ten-year registration**.--Except as provided under subsection (a.1) . . . , the following individuals shall be required to register with the Pennsylvania State Police for a period of 10 years:

>> (1)(i)(A) Individuals convicted within this Commonwealth of any of the following offenses committed on or after April 22, 1996, but before December 20, 2012:

>>> . . . .

>>> 18 Pa.C.S. § 3126 (relating to indecent assault) where the offense is graded as a misdemeanor of the first degree or higher.

>>> . . . .

>> (2) Individuals convicted of an attempt, conspiracy or solicitation to commit any of the offenses under paragraph (1)(i) or (ii)[.]

>> (3) Individuals who currently have a residence in this Commonwealth who have been convicted of offenses similar to the crimes cited in paragraphs (1)(i) or (ii) and (2) under the laws of . . . another state[.] . . .

**(a.1) Exception to 10-year registration**.—[Unless a lifetime registrant as indicated in (b)[8]], an individual considered to be an offender under [§ 56](b) (relating to registration procedures and applicability) shall be required to register with the Pennsylvania State Police for a period less than life, the duration of which is to be determined under [§§ 54] (relating to applicability) and [56](b).

42 Pa.C.S. § 9799.55.

Therefore, pertinent to these appeals, § 55 stipulates that people who, in a different jurisdiction, committed or attempted to commit offenses similar to those enumerated in § 55(a) are generally subject to a ten-year registration requirement, but if they are classified as an offender under § 56(b), the duration of their registration is established by §§ 54 and 56(b).

As reproduced above, § 54 requires individuals convicted of an offense similar to one enumerated in § 55 to register for the period indicated by § 56(b).  Pursuant to § 56(b), a person who lives, works, or goes to school in Pennsylvania must register here if previously "convicted of or sentenced by a court or court martialed for a sexually violent offense or a similar offense under the laws of . . . another state . . . , or who was required to register

_____

[8] Subsection (b) of § 55 describes individuals who are subject to lifetime registration, such as SVPs and people convicted of rape, aggravated indecent assault, or incest with a victim under the age of thirteen.  The Commonwealth did not advocate in the trial court or in this Court that Appellants are subject to registration pursuant to § 55(b), and we have found nothing in the certified record to suggest that Appellants are subject to lifetime registration pursuant to that subsection.  Hence, we focus our analysis upon subsections (a) and (a.1).

under a sexual offender statute in the jurisdiction where convicted, sentenced,

or court martialed[.]" 42 Pa.C.S. § 9799.56(b)(4).[9] The statute goes on to

identify different subsets of such out-of-state offenders and mandates their

compliance with certain portions of Subchapter I as follows:

> (i) If the individual has been classified as a sexually violent
> predator as defined in [§ 53] or determined under the laws of the
> other jurisdiction or by reason of court martial to be subject to
> active notification and lifetime registration on the basis of a
> statutorily authorized administrative or judicial decision or on the
> basis of a statute or administrative rule requiring active
> notification and lifetime registration based solely on the offense
> for which the individual was convicted, sentenced or court
> martialed, the individual shall, notwithstanding [§ 53[10]], be
> considered a sexually violent predator and subject to lifetime
> registration under [§ 55](b). . . .

> (ii) Except as provided in subparagraphs (i) and (iv), if the
> individual has been convicted or sentenced by a court or court
> martialed for an offense listed in [§ 55](b) or an equivalent
> offense, the individual shall, notwithstanding [§ 53[11]], be

---

[9] Subsection (4) is the only substantive provision of § 56(b), as subsections (1) through (3) are reserved.

[10] The definition of "sexually violent predator" in § 53 speaks to the individual having been determined to have a mental abnormality or personality disorder that makes him likely to engage in predatory sexually violent offenses. Subsection (i) of § 56(b)(4) expands that definition to include persons who were subject to active notification and lifetime registration based solely upon the offense.

[11] The term "offender" is defined in § 53 as follows: "Subject to [§ 75] (relating to construction of subchapter), an individual required to register under [§ 55](a), (b)(1) or (2) (relating to registration). The rules for construing Subchapter I contained in § 75 indicate that nothing in the subchapter may be understood to relieve an individual from the duty to register if the person committed a sexually violent offense here or elsewhere, regardless of whether the offense was designated as a sexually violent one,
*(Footnote Continued Next Page)*

considered an offender and be subject to lifetime registration under [§ 55](b). . . .

(iii) Except as provided in subparagraphs (i), (ii), (iv) and (v), if the individual has been convicted or sentenced by a court or court martialed for an offense listed in [§ 55](a) or an equivalent offense, the individual shall be, notwithstanding [§ 53], considered an offender and subject to registration under this subchapter. . . .

(iv) Except as provided in subparagraph (i) and notwithstanding subparagraph (v), if the individual is subject to active notification in the other jurisdiction or subject to active notification by reason of court martial, the individual shall, notwithstanding [§ 53], be considered an offender[.] . . .

(v) Except as provided in subparagraphs (i), (ii), (iii) and (iv), if the individual is subject to passive notification in the other jurisdiction or subject to passive notification by reason of court martial, the individual shall, notwithstanding [§ 53], be considered an offender and subject to this section and [§ 60 (relating to verification of residence)[12]] and [§ 63](c)(2) [(regarding information about offenders posted on an internet website)]. The individual shall be subject to this subchapter for a period of time equal to the time for which the individual was required to register in the other jurisdiction or required to register by reason of court martial, less any credit due to the individual as a result of prior compliance with registration requirements.

42 Pa.C.S. § 9799.56(b)(4).

_____

or if the person was required to register under a prior version of Megan's Law, or would have been so required had our Supreme Court not struck down the 2004 version in **Commonwealth v. Neiman**, 84 A.3d 603 (Pa. 2013). **See** 42 Pa.C.S. § 9799.75(a).

[12] Relevant to the cases *sub judice*, §§ 56 and 60 require out-of-state offenders to inform PSP within three business days of a change in residence, employment, or enrollment as a student, and to appear annually at a PSP-approved registration site. **See** 42 Pa.C.S. §§ 9799.56(a)(2), 9799.60(b).

The term "active notification" utilized in § 56(b)(4)(i) and (iv) is defined as "[n]otification in accordance with [§ 62] (relating to other notification) or a process whereby law enforcement, pursuant to the laws of . . . another state . . . notifies persons in the community in which the individual resides, including a person identified in [§62](b), of the residence, employment or school location of the individual."  42 Pa.C.S. § 9799.53.  By contrast, "passive notification," included in § 56(b)(4)(v), is defined as follows:

> Notification in accordance with [§ 63] (relating to information made available on Internet and electronic notification) or a process whereby persons, under the laws of . . . another state . . . are able to access information pertaining to an individual **as a result of the individual having been convicted or sentenced by a court for an offense similar to an offense listed in** [**§ 55**] (relating to registration).

42 Pa.C.S. § 9799.53 (emphasis added).

It is undisputed that Appellants' convictions did not trigger active notification in North Carolina.  Rather, as detailed above, their convictions obligated them to register in North Carolina for thirty years upon their release from confinement  and resulted in their registration information being made available for public inspection.  *See* N.C.G.S. §§ 14-208.6(4)(a), (5); 14-208.7(a); 14-208.10.  Further, as we indicated above, § 55(b) is not pertinent to these appeals because Appellants were not determined to be SVPs or otherwise subject to lifetime registration.

Therefore, the only portions of § 56(b)(4) that could apply to Appellants to impose a registration duty are either subsection (iii), which requires an

extra-jurisdictional conviction of an offense "equivalent" to one enumerated in § 55(a), or subsection (v), which applies if they were subject to passive notification in North Carolina. Regarding the latter subsection, by the statutory definition of the term, Appellants were subject to passive notification in North Carolina only if members of the public had access to their registration information "as a result of . . . having been convicted or sentenced by a court for an offense similar to an offense listed in [§ 55.]" 42 Pa.C.S. § 9799.53. Thus, unless the indecent liberties offense is equivalent or similar to an offense listed in § 55, § 56(b)(4) did not create a registration obligation.[13]

The Commonwealth, relying upon our sister Court's decision in ***Rivera v. Pennsylvania State Police***, 255 A.3d 677 (Pa.Cmwlth. 2021), argues that all individuals who had incomplete registration requirements in other jurisdictions, regardless of similarity of offenses, are required to register in Pennsylvania because § 56(b)(4) indicates that "Pennsylvania extends full faith and credit to out-of-state registration schemes." Commonwealth's panel reconsideration brief at 8 (quoting ***Rivera***, ***supra*** at 683). We disagree.

_____

[13] We observe that the definition of passive notification contained in the version of Megan's Law enacted prior to the 2012 version of SORNA, which was purportedly in effect when Crenshaw first registered in Pennsylvania, utilized the language, including the similarity requirement, that appears in its definition in Subchapter I. ***See*** 42 Pa.C.S. § 9792 (expired December 20, 2012). Hence, § 75's rules of construction do not serve to expand § 63's definition of passive notification or the reach of § 56(b)(4)(v) insofar as it applies to individuals subject to passive notification in the state where the person was convicted.

First, ***Rivera*** involved a New York rape conviction that subjected the offender to lifetime registration in that jurisdiction, and the offender claimed he no longer had any duty to register because he had obtained an order from a Pennsylvania court indicating that he no longer had a duty to register in light of our Supreme Court's decision in ***Commonwealth v. Muniz***, 164 A.3d 1189 (Pa. 2017). Hence, the ***Rivera*** Court was not called upon to examine the similarity of the rape statutes in New York and Pennsylvania. Second, since we are not bound by decisions of the Commonwealth Court, it is the plain language of Subchapter I that dictates our interpretation of it. As detailed above, if our legislature intended to mandate registration for all Pennsylvania residents subject to passive notification in another jurisdiction regardless of the similarity of the offense to an enumerated Pennsylvania offense, it would have omitted the similarity element from the passive notification definition as it did with the definition of active notification. It did not. Therefore, in order for § 56(b)(4)(v) to impose a duty on Appellants to register, their North Carolina convictions that trigged notification in that jurisdiction must be similar to an enumerated § 55 offense.

In sum, the import of the statutes at issue is as follows. If Appellants' convictions for taking indecent liberties with children are "similar to" any offenses enumerated in § 55(a)(1) or (2), then § 55(a)(3) required them to register in Pennsylvania for ten years. If the information about Appellants that was available to the public in North Carolina by the above-described

passive means resulted from those "similar" convictions, then § 55(a.1) extended the duration of the registration to the thirty years imposed by North Carolina law.[14]   However, if taking indecent liberties with children is not "similar to" or "an equivalent" of any offense included in § 55(a)(1) or (2), then Appellants had no duty to register in Pennsylvania under § 55, and their § 4915.2 criminal convictions for failing to register are invalid.  Consequently, resolution of these appeals requires us to determine whether such similarity exists.

### III.  Similarity of Offenses

#### A.    The Categorical Approach to Comparing Statutes

In *A.L.*, our Supreme Court tackled the issue of whether a court martial should be compared with a Pennsylvania offense for purposes of registration under Subchapter H of SORNA.  In so doing, the Court examined how this

---

[14] Appellants argue that the use of "is" in § 56(b)(4)(v) means that they could not be deemed offenders by virtue of that provision because they were "not subject to passive registration in North Carolina" after they left that state and began residing in Pennsylvania.  *See* Crenshaw's brief at 30; McBride's brief at 31.  We first note that § 56(b)(4)(v) references passive **notification**, not passive **registration**.  Moreover, as the Commonwealth observes, Appellants did not raise this as a basis for dismissal in the trial court, they do not cite on appeal any provision of North Carolina law that suggests that the notification connected with their thirty-year registration ceased when they left the state, and, in any event, both Appellants still have entries on the North Carolina passive notification website on which their information is included.  *See* Commonwealth's brief (Crenshaw) at 10-12 (citing https://sexoffender.ncsbi.gov); Commonwealth's brief (McBride) at 11-12 (same).  Consequently, we reject Appellants' contention that their absence from North Carolina removed them from the ambit of § 56(b)(4)(v).

Court and the Commonwealth Court had undertaken offense comparisons in other contexts, such as a person's disqualification from obtaining a commercial driver's license or possessing a firearm, or the applicability of sentencing enhancements. **A.L.**, **supra** at 1232-34. The Court explained:

> [G]auging offense similarity or equivalency has generally been accomplished by comparing the elements of the out-of-state offense with those of the in-state offense. If the elements are the same, or if the offense of conviction is narrower than the reference offense – meaning it captures a subset of the conduct of the reference offense – the two are comparable. If, however, the offense of conviction defines the crime in terms of alternative elements, the question becomes whether the offense of conviction was based on the same elements as defined under the Pennsylvania statute. . . . This approach to comparing offenses ensures that, to count as a predicate, the out-of-state conviction signifies the individual was found guilty in that jurisdiction of every element of the Pennsylvania offense.

**Id**. at 1233 (cleaned up).

The **A.L.** Court detailed that this categorical approach has been endorsed by the United States Supreme Court and is often applied in relation to the Armed Career Criminal Act ("ACCA"), which establishes sentencing enhancements for felons with certain prior, predicate convictions that usually occurred at the state level. Our High Court described as follows the process of comparing the generic ACCA reference offense with the prior state offenses:

> To evaluate whether a prior state conviction counts as an ACCA predicate, the Supreme Court compares the elements of the generic crime with the elements under state law, a method it refers to as the categorical approach. The sentencing court does not focus on the particular facts underlying the predicate conviction as to do so could entail an elaborate factfinding process that would be impractical, including where the conviction was based on a guilty plea. The Court has articulated three reasons

for choosing this approach: Congress made the sentence enhancement to depend on convictions not actions; any effort at fact-finding for sentencing purposes would be problematic under the Sixth Amendment; and daunting difficulties and inequities would arise from a sentencing court's effort at belated fact-finding based on aged documents, especially when their content is subject to interpretation.

With that said, the Supreme Court has also consistently recognized that some state offenses are defined by a divisible statute, meaning the statute gives alternative elements, usually phrased in the disjunctive, that could make up the offense. In such cases, the Court has approved what it calls the modified categorical approach, allowing the sentencing court to consult a limited class of documents from the conviction record, such as indictments and jury instructions, to determine the alternative element, and thus, the alternative crime, of which the defendant was previously found guilty. Assuming the sentencing court can, in fact, determine from that limited set of documents the specific alternative crime of which the defendant was convicted, the court can then do what the categorical approach demands: compare the elements of the crime of conviction (including the alternative element used in the case) with the elements of the generic crime. While this was first characterized as an exception to the categorical approach, the Court later clarified it was not an exception but a tool because it retains the categorical approach's central feature: a focus on the elements, rather than the facts, of a crime.

*Id*. at 1234–35 (cleaned up).

In order "to remove guesswork, inconsistency, and *ad hoc* agency decision-making, to promote the legislative focus on prior convictions rather than prior actions," and also "to foreclose the type of daunting difficulties and potential unfairness [that] would arise if a reviewing entity years later were to sift through voluminous aged documents to ascertain exactly what the SORNA registrant did (as opposed to what he was convicted of)," the **A.L.** Court held that the categorial approach "is to be applied when ascertaining

whether a prior extra-jurisdictional offense is 'comparable' or 'equivalent' under SORNA Subchapter H." *Id*. at 137-38 (cleaned up).

While the *A.L.* Court specifically resolved the issue of determining whether an offense is "comparable" or "equivalent" for purposes of Subchapter H, in examining prior Pennsylvania law, it observed that our courts have been called upon to compare offenses in a variety of circumstances, noting that, "[t]o express the concept of similarity in these arenas, the legislative body has used different adjectives such as 'equivalent,' 'similar,' 'essentially similar,' 'comparable,' and 'substantially the same'" without defining the terms. *Id*. at 1236. As the term "similar" is likewise not defined in Subchapter I, the same risks of inconsistency and guesswork are plainly implicated here as those that compelled the *A.L.* Court to adopt the categorical approach in applying Subchapter H. Further, while the Commonwealth disputes whether a similarity of offenses is necessary, an issue we resolved against it *supra*, it does not contest that *A.L.* now dictates the nature of the similarity analysis for purposes of applying Subchapter I.

Accordingly, our task is to apply the categorical approach to determine whether the elements of the North Carolina offense for which Appellants were convicted are the same as, or narrower than, an offense enumerated in § 55. If not, we consider whether the North Carolina offense is divisible and the limited class of permissible documents reveals that Appellants were convicted pursuant to the alternative element that is wholly subsumed within a § 55

offense. If either of those comparisons reveals that Appellants' North Carolina convictions stemmed from an offense similar to one enumerated in § 55, then Appellants were required to register pursuant to Subchapter I, and they are entitled to no relief in these appeals. Otherwise, their convictions and sentences are invalid. Therefore, we examine the offenses at issue.

### B.    Taking Indecent Liberties with Children

The North Carolina criminal statute underlying Appellants' convictions provides as follows:

> A person is guilty of taking indecent liberties with children if, being 16 years of age or more and at least five years older than the child in question, he either:
>
> (1) Willfully takes or attempts to take any immoral, improper, or indecent liberties with any child of either sex under the age of 16 years for the purpose of arousing or gratifying sexual desire; or
>
> (2) Willfully commits or attempts to commit any lewd or lascivious act upon or with the body or any part or member of the body of any child of either sex under the age of 16 years.

N.C.G.S. § 14-202.1(a). Hence, the elements of the crime are:

> (1) the defendant was at least 16 years of age, and more than five years older than the victim, (2) the victim was under 16 years of age at the time the alleged act or attempted act occurred, and (3) the defendant willfully took or attempted to take an immoral, improper, or indecent liberty with the victim for the purpose of arousing or gratifying sexual desire.

*State v. McClees*, 424 S.E.2d 687, 689 (N.C.App. 1993).

North Carolina courts have explained that "indecent liberties" are "such liberties as the common sense of society would regard as indecent and

improper." *State v. Every*, 578 S.E.2d 642, 647 (N.C.App. 2003) (cleaned up). "Neither a completed sex act nor an offensive touching of the victim [is] required to violate the statute." *State v. McClary*, 679 S.E.2d 414, 418 (N.C.App. 2009). The broader protections of children contemplated by the statute criminalize such acts as having sexually explicit telephone conversations with a child while masturbating, *see Every*, *supra*; "photographing an unclothed child in a sexually suggestive position, masturbating in front of a child, . . . secretly videotaping a child who was undressing," *id*. at 648 (citations omitted, collecting cases); sitting on a log twenty yards away from children on the opposite side of a creek engaging in the lewd act of masturbation and inviting the children to imitate him, *see State v. Strickland*, 335 S.E.2d 74, 76 (N.C.App. 1985); and handing a child "a letter containing sexually graphic language for the purpose of soliciting sexual intercourse and oral sex." *McClary*, *supra* at 418.

## C. Indecent Assault

The Commonwealth and trial court proffered Pennsylvania's indecent assault statute as the enumerated offense to which Appellants' convictions were similar. That statute provides as follows as pertains to the issues in these appeals:

> A person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and:

. . . .

(7) the complainant is less than 13 years of age; or

(8) the complainant is less than 16 years of age and the person is four or more years older than the complainant and the complainant and the person are not married to each other.

18 Pa.C.S. § 3126(a).

Indecent contact is defined as "[a]ny touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in any person." 18 Pa.C.S. § 3101. Intimate parts are not solely sexual organs, but any "body part that is personal and private, and which the person ordinarily allows to be touched only by people with whom the person has a close personal relationship, and one which is commonly associated with sexual relations or intimacy." ***Commonwealth v. Gamby***, 283 A.3d 298, 313–14 (Pa. 2022) (holding the neck is an intimate body part).

As indicated above, Subchapter I requires registration following conviction for committing an indecent assault, or attempting to do so, only if it is graded as a first-degree misdemeanor or higher. ***See*** 42 Pa.C.S. § 9799.55(a)(1)(i)(A). The grading portion of the indecent assault statute states the following:

Indecent assault shall be graded as follows:

(1) An offense under [18 Pa.C.S. § 3126](a)(1) or (8) is a misdemeanor of the second degree.

. . . .

(3) An offense under [18 Pa.C.S. § 3126](a)(7) is a misdemeanor of the first degree unless any of the following apply, in which case it is a felony of the third degree:

(i) It is a second or subsequent offense.

(ii) There has been a course of conduct of indecent assault by the person.

(iii) The indecent assault was committed by touching the complainant's sexual or intimate parts with sexual or intimate parts of the person.

(iv) The indecent assault is committed by touching the person's sexual or intimate parts with the complainant's sexual or intimate parts.

18 Pa.C.S. § 3126(b).

Hence, for indecent assault to trigger Subchapter I registration, not only must there be physical touching of intimate parts for purposes of arousing sexual desire, but the complainant also had to be under the age of thirteen.

### D.    Analysis

Upon thorough examination, it is plain that the North Carolina offense of taking indecent liberties with children is not similar to indecent assault under the categorical approach.[15]  First, North Carolina appellate courts have

_____

[15] The trial court, which issued its ruling before our Supreme Court decided ***A.L.***, held that it was "clear to the [court] that while the North Carolina offense of taking indecent liberties with a child and the Pennsylvania offense of indecent assault are not identical, they are sufficiently similar to require [Appellants] to register under SORNA Subchapter I."  Trial Court Opinion (McBride), 3/9/22, at 8; Trial Court Opinion (Crenshaw), 3/22/22, at 7.  The trial court alternatively opined that, even if the offenses were not similar, Appellants were required to register pursuant to the reciprocity provision of
*(Footnote Continued Next Page)*

held that the disjunctive subsections of § 14-202.1(a) do not identify separate offenses, but rather state "two alternative means of proving one element of the offense of indecent liberties." *State v. Jones*, 616 S.E.2d 15, 20 (N.C.App. 2005). In other words, it is not a particular set of acts the North Carolina legislature sought to criminalize with § 14-202.1, but rather the actor's purpose in seeking sexual gratification by exposing a child of fifteen or younger to lewdness and indecency:

> [T]he evil the legislature sought to prevent in this context was the defendant's performance of any immoral, improper, or indecent act in the presence of a child for the purpose of arousing or gratifying sexual desire. Defendant's purpose for committing such act is the gravamen of this offense; the particular act performed is immaterial.

*Id*. at 20 (cleaned up).

As Appellants argue, and the Commonwealth concedes, taking indecent liberties is broader than indecent assault in that it does not require any physical contact. *See* Appellant's panel reconsideration brief at 10-11; Commonwealth's panel reconsideration brief at 5. Thus, an individual

---

§ 56. *See* Trial Court Opinion (McBride), 3/9/22, at 8; Trial Court Opinion (Crenshaw), 3/22/22, at 7. Since the trial court did not apply the categorical approach of comparing the statutes, and as we discussed above, § 56(b)(4)(v)'s reference to unexpired passive notification in another jurisdiction incorporates a similarity requirement, the trial court's alternative analyses cannot support its ruling. Instead, our task is to determine whether the trial court's decision can be sustained on another basis. *See*, *e.g.*, *Commonwealth v. Ani*, 293 A.3d 704, 729 (Pa.Super. 2023) "As an appellate court, we may affirm on any legal basis supported by the certified record." (cleaned up)).

convicted of taking indecent liberties in North Carolina offense was not necessarily found guilty of every element of the indecent assault offense enumerated in Subchapter I offense. Consequently, applying the categorical approach, the offenses are not similar.

Second, as the Commonwealth was likewise compelled to admit, even if we disregarded the North Carolina court's holding that the statute was not a divisible statute identifying separate offenses, none of the limited class of documents that are acceptably referenced indicates whether Appellants were specifically convicted of violating N.C.G.S. § 14-202.1(a)(2), which requires an act upon the body of the complainant similar to the physical contact required by Pennsylvania's indecent assault statute. *See* Commonwealth's panel reconsideration brief at 6. Rather, the certified copies of Appellants' convictions admitted at their respective trials did not specify a particular subsection of § 14-202.1(1)(a), but referenced § 14-202.1 generally. *See* Commonwealth's Exhibit 2 (Crenshaw); Commonwealth's Exhibit 2 (McBride).

Furthermore, as we noted above, regardless of the conduct committed, the indecent liberties offense can be established if the victim is thirteen, fourteen, or fifteen years old while, to be an enumerated offense pursuant to § 55(a)(1), the complainant had to be twelve or younger. Hence, to determine whether Appellants' convictions were based upon guilt of every element required to establish the Pennsylvania crime, we would have to ascertain what

Appellants did rather than of what they were convicted. Our High Court's *A.L.* decision prohibits such a similarity analysis.

For these reasons, we are constrained to hold that Appellants' North Carolina convictions for taking indecent liberties with children were not similar to convictions for indecent assault for purposes of Subchapter I of SORNA. ***Accord A.L.***, ***supra*** at 1239-40 (holding statute which included a broader *mens rea* element than its Pennsylvania counterpart was not comparable). Consequently, Appellants had no obligation to register in accordance with §§ 56 or 60 and could not validly be convicted pursuant to 18 Pa.C.S. § 4915.2 for failing to do so.

## IV.    Conclusion

The North Carolina statute under which Appellants were convicted is broader than the § 55 offense that the Commonwealth proffered as a similar Pennsylvania offense. As such, the Commonwealth failed to establish that Appellants' out-of-state convictions triggered a duty for them to register in Pennsylvania pursuant to Subchapter I. Since Appellants were not individuals subject to registration under § 55, they did not commit the charged crimes by failing to register. As a result, their convictions in the instant cases are unsound. Therefore, we vacate Appellants' judgments of sentence, reverse their convictions, and discharge them.

Judgments of sentence vacated. Convictions reversed. Appellants discharged.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 12/1/2023