J-A15030-24

2024 PA Super 250

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ANGEL MIGUEL MUNOZ-RODRIGUEZ | : | |
| | : | |
| Appellant | : | No. 1535 MDA 2023 |

Appeal from the PCRA Order Entered October 20, 2023
In the Court of Common Pleas of Adams County Criminal Division at
No(s):  CP-01-CR-0000334-2020

BEFORE:  DUBOW, J., BECK, J., and STEVENS, P.J.E.[*]

OPINION BY BECK, J.:                    **FILED: OCTOBER 30, 2024**

Angel Miguel Munoz-Rodriguez ("Munoz-Rodriguez") appeals pro se from the order entered October 20, 2023, by the Adams County Court of Common Pleas ("PCRA court") dismissing his first timely petition filed pursuant to the Post Conviction Relief Act ("PCRA").[1]  In this appeal, we review whether Munoz-Rodriguez's conviction in Maryland of a sexual offense of the third degree obligates him to lifetime registration requirements under Subchapter I of Pennsylvania's Sexual Offender Registration and Notification Act ("SORNA"),[2] and consequently, whether his conviction of failure to comply with the registration requirements of Subchapter I is sound.  Upon review, we

---

[*] Former Justice specially assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.

[2] 42 Pa.C.S. §§ 9799.51-9799.75.

are constrained to conclude that Munoz-Rodriguez does not have a duty to register in Pennsylvania. We therefore reverse the order of the PCRA court, vacate his judgment of sentence, reverse his conviction, and order him discharged from custody.

We glean the following from the certified record. On or about August 27, 2003, Munoz-Rodriguez entered a negotiated guilty plea to a sexual offense of the third degree in Maryland.[3] The Maryland court sentenced him to 3 years of confinement, with said period suspended except for time served of 159 days, followed by 2 years of probation. Munoz-Rodriguez is subject to lifetime registration requirements in Maryland.[4]

_____

[3] *See* Md. Code Ann., Crim. Law § 3-307(a)(3). The certified record does not contain certified documents relating to Munoz-Rodriguez's conviction in Maryland, including his charging document. His immediate-past PCRA counsel, Attorney Brandy Hoke, attached to her petition to withdraw as counsel the notes of testimony from Munoz-Rodriguez's guilty plea and sentencing hearing in Maryland on August 27, 2003, and his Maryland Sex Offender Registration. *See* Petition to Withdraw as Counsel, 9/7/2023, Exs. A-B. While those exhibits do not reference the statutory subsection to which Munoz-Rodriguez pled guilty in Maryland, the parties agree that it was subsection (a)(3). *See* Munoz-Rodriguez's Brief at 8, 30; Commonwealth's Brief at i, 9, 11-12; *see also* PCRA Court Opinion, 10/20/2023, at 1-2, 11-12.

[4] *See* Md. Code Ann., Crim. Proc. §§ 11-701(q)(2) (defining a tier III sex offender to include a person who has been convicted of a violation of § 3-307(a)(3) if the victim is under the age of 14 years), 11-707(a)(4)(iii) (stating tier III sex offenders are required to register for life); *see also* Petition to Withdraw as Counsel, 9/7/2023, Ex. B (Munoz-Rodriguez's Sex Offender Registration in Maryland designating his offense category as tier III and registration term as lifetime).

Munoz-Rodriguez relocated to Pennsylvania in or around 2004. On April 20, 2020, the Commonwealth filed an information charging Munoz-Rodriguez with one count of failure to register with the Pennsylvania State Police ("PSP"), subject to a grading enhancement to a first-degree felony based on a previous failure to register conviction.[5] On November 10, 2020, Munoz-Rodriguez entered a negotiated guilty plea to one count of failure to verify address/be photographed, graded as a second-degree felony.[6] The trial court sentenced Munoz-Rodriguez to a negotiated sentence of twenty-seven to sixty months in prison. The trial court denied post-sentence motions and Munoz-Rodriguez did not file a direct appeal.

On August 9, 2021, Munoz-Rodriguez filed a timely pro se PCRA petition, his first. Of relevance to our review of this matter, Munoz-Rodriguez challenged the legality of his sentence for failure to register under Subchapter I of SORNA based on his contention that he had no duty to register. *See* PCRA Petition, 8/9/2021, at 5, ¶¶ 13-42. Specifically, Munoz-Rodriguez claimed that the PSP erroneously determined that he is subject to a lifetime registration requirement under SORNA based on its conclusion that his 2003

_____

[5] *See* 18 Pa.C.S. §§ 4915.2(a)(1), 4915.2(c)(3). It appears from the record that in 2016, Munoz-Rodriguez pled guilty to failure to register at Franklin County Court of Common Pleas Docket No. CP-28-CR-0002264-2014. *See* Criminal Complaint, 2/20/2022, at 2; Petition to Withdraw as Counsel, 9/7/2023, at 13 (unpaginated).

[6] *See* 18 Pa.C.S. § 4915.2(a)(2); *see also* Sentencing Order, 11/10/2020; Amended Information, 11/10/2020.

conviction in Maryland was similar to Pennsylvania's offense of aggravated indecent assault. *See id.* Rather, Munoz-Rodriguez contended, his Maryland conviction was equivalent to the Pennsylvania offense of indecent assault,[7] which he alleged required him to register for ten years (and not life) under SORNA. *Id.*, ¶¶ 25, 28-29. Munoz-Rodriguez thus claimed that any ten-year period of registration had expired at the time the Commonwealth charged him with failure to register in February 2020, more than sixteen years after his Maryland conviction. *Id.*, at 5, ¶¶ 33-34. Consequently, Munoz-Rodriguez asserted that he was unlawfully induced to plead guilty to the crime of failing to register, "a crime that was impossible to commit, and that he is actually innocent thereof" based upon the PSP's "erroneous assessment" and the ineffective assistance of plea counsel. *Id.*, ¶¶ 36, 40.

The PCRA court appointed Munoz-Rodriguez counsel, Attorney Thomas Nell. Following a prehearing conference, the PCRA court ordered the parties to file memoranda of law addressing whether, pursuant to SORNA, Munoz-Rodriguez had to register for life in Pennsylvania based on his Maryland

_____

[7] 18 Pa.C.S. § 3126.

conviction.[8] On January 19, 2022, the PCRA court denied the PCRA petition[9] and thereafter granted Attorney Nell's petition to withdraw. Munoz-Rodriguez timely appealed pro se, asserting, inter alia, ineffective assistance of counsel by Attorney Nell. On March 25, 2022, this Court entered an order directing the PCRA court to determine Munoz-Rodriguez's eligibility for court-appointed counsel for his claims of ineffective assistance of initial PCRA counsel, Attorney Nell. The PCRA court appointed Attorney Jamison Entwistle, who filed in this Court a motion to withdraw and no-merit letter pursuant to ***Commonwealth v. Turner***, 544 A.2d 927 (Pa. 1988), and ***Commonwealth v. Finley***, 550 A.2d 213 (Pa. Super. 1988) (en banc). This Court found Attorney Entwistle complied with the mandates of ***Turner***/***Finley*** and granted his motion to withdraw. However, because Attorney Nell had neither represented Munoz-Rodriduez on the merits of his PCRA petition nor filed a sufficient

---

[8] Attorney Nell filed a document titled "Memorandum of Law" in which he found Munoz-Rodriguez's claims lacked merit; referenced Munoz-Rodriguez's arguments that were set forth in a pro se memorandum of law, which Attorney Nell attached to his filing; explained why he disagreed with Munoz-Rodriguez; stated he sent Munoz-Rodriguez a "no-merit" letter and intended to file a motion to withdraw; and assured Munoz-Rodriguez that the PCRA court would address his pro se memorandum. Memorandum of Law, 12/10/2021. The Commonwealth did not file a memorandum, presumably because of the nature of Attorney Nell's filing.

[9] It does not appear from the certified record that the PCRA court issued notice of its intent to dismiss the petition without a hearing pursuant to Pa.R.Crim.P. 907(1). "A PCRA court's compliance with Rule 907 is mandatory," but Munoz-Rodriguez failed to challenge its absence, resulting in waiver of the claim. ***Commonwealth v. Wooden***, 215 A.3d 997, 1001 (Pa. Super. 2019) (citation omitted).

*Turner*/*Finley* no-merit letter that addressed all his claims in the court below, we vacated the PCRA order denying the petition and remanded with instructions for the PCRA court to appoint new PCRA counsel. ***Commonwealth v. Munoz-Rodriguez***, 285 MDA 2022, 2023 WL 2581851 (Pa. Super. filed Mar. 21, 2023) (non-precedential decision).

Upon remand, the PCRA court appointed Attorney Hoke as new PCRA counsel.[10] On September 7, 2023, Attorney Hoke filed a petition to withdraw and *Turner*/*Finley* no-merit letter, to which Munoz-Rodriguez filed a pro se response. On October 20, 2023, the PCRA court granted Attorney Hoke's petition to withdraw and denied Munoz-Rodriguez's PCRA petition.[11] Munoz-Rodriguez filed a pro se motion for reconsideration, which the PCRA court denied. This appeal followed.

On appeal, Munoz-Rodriguez raises the following issues for our review.

1. Whether the PCRA court erred and abused its discretion by again failing to conduct the appropriate out-of-state similarity determination, for sexual offender registration purposes, when it did not consider all the elements of the aggravated indecent assault crime of violence (18 Pa.C.S.[] § 3125), vis-a-vis the indecent contact admitted to in Maryland, such as:

    (A) The required culpability of recklessness/malice; and

---

[10] The PCRA court initially appointed different PCRA counsel, but the court permitted that attorney to withdraw because of a conflict of interest.

[11] Once again, it does not appear from the certified record that the PCRA court issued notice of its intent to dismiss the petition without a hearing pursuant to Pa.R.Crim.P. 907(1), the absence of which Munoz-Rodriguez again fails to challenge. ***See supra***, note 9.

(B)   The gravity of the offense from a sentencing perspective; and

(C)   The general assembly's specific designation of 18 [Pa.C.S.] § 3125 constituting a "crime of violence;" and

(D)   The distinguishing factors of "forbidden conduct" and "culpability."

2.   Whether the PCRA court erred and abused its discretion when it granted appointed PCRA counsel's **Turner**/**Finley** motion to withdraw when PCRA counsel failed to guide the court as to the proper resolution of the matters at law; thereby, depriving [Munoz-Rodriguez] of the right to competent advocacy.

Munoz-Rodriguez's Brief at 4 (suggested answers omitted).

Our review of a PCRA court's decision is limited to examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error. We view the findings of the PCRA court and the evidence of record in a light most favorable to the prevailing party. With respect to the PCRA court's decision to deny a request for an evidentiary hearing, or to hold a limited evidentiary hearing, such a decision is within the discretion of the PCRA court and will not be overturned absent an abuse of discretion.

**Commonwealth v. Wilson**, 273 A.3d 13, 18 (Pa. Super. 2022) (citations omitted).

Munoz-Rodriguez first argues that the PCRA court failed to properly apply the "equivalency evaluation" set forth in **Commonwealth v. Northrip**, 985 A.2d 734 (Pa. 2009), when it determined that Munoz-Rodriguez's 2003 conviction in Maryland was similar to our aggravated indecent assault offense. Munoz-Rodriguez's Brief at 8. He argues that the PCRA court ignored in its

- 7 -

analysis the elements of culpability, gravity of the offense, and our General Assembly's designation of aggravated indecent assault as a "crime of violence." *Id.* at 9, 13-14 (citing 18 Pa.C.S. §§ 103 (definition of "element of an offense"), 302 (general requirements of culpability)). Munoz-Rodriguez contends that because all appointed counsel failed to direct the court below to the proper equivalency determination test, their conduct "abrogated [his] right to counsel." *Id.* He points to this Court's footnote in his prior appeal, which noted that his counsel had erroneously limited their equivalency analysis to "facts" and not "comparative elements" of the criminal statutes at issue. *Id.* at 9-12 (citing *Munoz-Rodriguez*, 285 MDA 2022, 2023 WL 2581851, at *4 n.4).

Relevant to our disposition of this matter, Munoz-Rodriguez argues that the culpability element of the Maryland offense and aggravated indecent assault offense are dissimilar, contending that the Maryland statute is broader than our aggravated indecent assault statute. *Id.* at 29-30. He argues that the Maryland statute "proscribes identical conduct" to, and its "'purpose' is aligned" with, Pennsylvania's definition of "indecent contact." *Id.* at 31.[12]

---

[12] Munoz-Rodriguez further contends that reading 18 Pa.C.S. § 3125 and 42 Pa.C.S. § 9714(g) together, "[u]nless the conduct of masturbating a vagina was done in a violent manner, resulting in serious bodily injury," it cannot meet the definition of aggravated indecent assault, and that his act of digital penetration of a vagina, without serious bodily injury, only constitutes indecent assault. Munoz-Rodriguez's Brief at 18, 23. Not only does the plain language of the aggravated indecent assault statute belie Munoz-Rodriguez's
*(Footnote Continued Next Page)*

The issue here involves a question of statutory interpretation that implicates the legality of the sentence imposed, for which our standard of review is de novo and our scope of review is plenary. **Northrip**, 985 A.2d at 736 (citations omitted); **see also Commonwealth v. Crenshaw**, 306 A.3d 383, 387 (Pa. Super. 2023) (stating that whether an out-of-state conviction is similar under Subchapter I of SORNA to Pennsylvania's indecent assault statute is a question of statutory interpretation for which our standard of review is de novo and our scope of review is plenary). A challenge to the legality of an appellant's sentence raised in a timely PCRA petition "is always subject to review." **Commonwealth v. Fahy**, 737 A.2d 214, 223 (Pa. 1999); **see also Commonwealth v. Krout**, 1574 MDA 2021, 2022 WL 4100974, at *2 (Pa. Super. filed Sept. 8, 2022) (non-precedential) (addressing a claim interpreted as a challenge to the legality of sentence where the appellant alleged in a timely-filed PCRA petition the ineffectiveness of plea counsel for allowing him to plead guilty to failure to register under Subchapter I of SORNA because he had no duty to register, and addressing the merits of the claim

---

claim, but, as he recognizes, this Court has routinely held that digital penetration of a victim constitutes aggravated indecent assault. **See id.** at 21; 18 Pa.C.S. § 3125; **see**, **e.g.**, **Commonwealth v. Gonzalez**, 109 A.3d 711, 723 (Pa. Super. 2015) ("Digital penetration is sufficient to support a conviction for aggravated indecent assault[.]") (citation omitted).

even though appellant had pled guilty and failed to move to withdraw his guilty plea or file a direct appeal).[13]

> "The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. § 1921(a). "The plain language of the statute is the best indicator of the legislature's intent. To ascertain the plain meaning, we consider the operative statutory language in context and give words and phrases their common and approved usage." ***Commonwealth v. Chesapeake Energy Corp.***, 665 Pa. 2, 247 A.3d 934, 942 (2021).
>
> Further, we must give effect and ascribe meaning to each word and provision chosen by our legislature, assuming none is mere surplusage. ***See***, ***e.g.***, ***Commonwealth v. McClelland***, 660 Pa. 81, 233 A.3d 717, 734 (2020) ("Some meaning must be ascribed to every word in a statute ... and there is a presumption that disfavors interpreting language as mere surplusage."); 1 Pa.C.S. § 1921(a) ("Every statute shall be construed, if possible, to give effect to all its provisions.").

***Crenshaw***, 306 A.3d 383, 387-88.

The criminal offense to which Munoz-Rodriguez pled guilty in this case provides, in pertinent part:

> **(a) Offense defined.--**An individual who is subject to registration under 42 Pa.C.S. § 9799.55(a), (a.1) or (b) (relating to registration) or who was subject to registration under former 42 Pa.C.S. § 9793 (relating to registration of certain offenders for ten years) commits an offense if the individual knowingly fails to:
>
> *     *     *
>
> (2) verify the individual's residence or be photographed as required under 42 Pa.C.S. § 9799.60 (relating to verification of residence)[.]

---

[13] Pursuant to Pa.R.A.P. 126(b), non-precedential decisions of this Court filed after May 1, 2019, may be cited for their persuasive value.

18 Pa.C.S. § 4915.2(a)(2). To convict Munoz-Rodriguez of violating section 4915.2(a)(2), the Commonwealth was required to prove three elements: that he (1) was subject to registration under section 9799.55 and (2) knowingly (3) failed to follow the registration procedure specified in section 9799.60. *See Crenshaw*, 306 A.3d at 388 & n.6. Munoz-Rodriguez does not challenge the second or third elements, but rather contends that he was not subject to registration under section 9799.55.

> By way of background, Subchapter I of SORNA was enacted in 2018 to prescribe registration requirements for sexual offenders who, because they committed their offenses before December 20, 2012, could not be subject to the punitive requirements of the original version of SORNA that is now codified in Subchapter H.[fn] Within Subchapter I, § [9799.]54 ("Applicability") indicates who must register, § [9799.]55 ("Registration") sets forth the offenses that trigger a reporting requirement, and § [9799.]56 ("Procedures and applicability") details the timing and length of registration. All three statutes contain provisions specific to individuals whose offenses were committed outside of this Commonwealth.
>
> > [fn] *See Commonwealth v. Lacombe*, [] 234 A.3d 602, 628 ([Pa.] 2020) (Wecht, J., concurring and dissenting) (explaining that, after our High Court ruled that retroactive application of SORNA constituted an ex post facto violation, the General Assembly "bifurcated SORNA within the Sentencing Code into two distinct subchapters: Subchapter H and Subchapter I. Subchapter H governs offenders whose triggering crimes were committed on or after December 20, 2012. Subchapter I applies retroactively to those whose offenses occurred before that date." (footnote omitted)).

*Id.* (italics removed, footnote in original). In relevant part, section 9799.54 provides:

> **(a) Registration.--**The following individuals shall register with the Pennsylvania State Police as provided in this subchapter:

* * *

(4) An individual who was convicted of an offense similar to an offense set forth in section 9799.55 under the laws of … another state … and who, as of February 21, 2018, has not completed registration requirements. The period of registration shall be as set forth in section 9799.56(b)(4) (relating to registration procedures and applicability) less any credit for time spent on a sexual offender registry of … another state … or with the Pennsylvania State Police prior to February 21, 2018.

42 Pa.C.S. § 9799.54(a)(4).

In turn, section 9799.55 provides, in pertinent part:

**(a) Ten-year registration.--**Except as provided under subsection (a.1) or (b), the following individuals shall be required to register with the Pennsylvania State Police for a period of 10 years:

(1)(i)(A) Individuals convicted within this Commonwealth of any of the following offenses committed on or after April 22, 1996, but before December 20, 2012:

* * *

18 Pa.C.S. § 3126 (relating to indecent assault) where the offense is graded as a misdemeanor of the first degree or higher.

* * *

(3) Individuals who currently have a residence in this Commonwealth who have been convicted of offenses similar to the crimes cited in paragraphs (1)(i) or (ii) and (2) under the laws of … another state[.]

**(a.1) Exception to 10-year registration.--**Except as provided under subsection (b), an individual considered to be an offender under section 9799.56(b) (relating to registration procedures and applicability) shall be required to register with the Pennsylvania State Police for a period less than life, the duration of which is to

be determined under sections 9799.54 (relating to applicability) and 9799.56(b).

**(b) Lifetime registration.--**The following individuals shall be subject to lifetime registration:

(2) Individuals convicted:

(i)(A) in this Commonwealth of the following offenses, if committed on or after April 22, 1996, but before December 20, 2012:

\* \* \*

18 Pa.C.S. § 3125 (relating to aggravated indecent assault); or

\* \* \*

(ii) of offenses similar to the crimes cited in subparagraph (i) under the laws of … another state, … if committed, or for which registration with the Pennsylvania State Police under a former sexual offender registration law of this Commonwealth was required, on or after April 22, 1996, but before December 20, 2012, who currently reside in this Commonwealth.

42 Pa.C.S. § 9799.55.  In other words, pursuant to section 9799.55, if Munoz-Rodriguez's conviction in Maryland is of an offense "similar" to one enumerated in section 9799.55(b) (e.g., aggravated indecent assault), he is subject to lifetime registration, but if his Maryland conviction is an offense "similar" to one enumerated in section 9799.55(a), he is subject to a ten-year registration requirement unless he is considered an "offender" under section 9799.56(b), in which case his registration period is determined by sections 9799.54 and 9799.56(b).  *See Crenshaw*, 306 A.3d at 389.

Section 9799.56(b) identifies subsets of certain out-of-state offenders and mandates compliance with certain portions of Subchapter I. *Id.* at 389-90. Section 9799.56(b) provides:

**(b) Individuals convicted or sentenced by a court or adjudicated delinquent in jurisdictions outside this Commonwealth or sentenced by court martial.--**

\* \* \*

(4) An individual who has a residence, is employed or is a student in this Commonwealth and who has been convicted of or sentenced by a court or court martialed … who was required to register under a sexual offender statute in the jurisdiction where convicted, sentenced or court martialed, shall register at an approved registration site within three business days of the individual's arrival in this Commonwealth. The provisions of this subchapter shall apply to the individual as follows:

(i) If the individual has been classified as a sexually violent predator as defined in section 9799.53 or determined under the laws of the other jurisdiction or by reason of court martial to be subject to active notification and lifetime registration on the basis of a statutorily authorized administrative or judicial decision or on the basis of a statute or administrative rule requiring active notification and lifetime registration based solely on the offense for which the individual was convicted, sentenced or court martialed, the individual shall, notwithstanding section 9799.53, be considered a sexually violent predator and subject to lifetime registration under section 9799.55(b). The individual shall also be subject to the provisions of this section and sections 9799.60 (relating to verification of residence), 9799.62 (relating to other notification) and 9799.63(c)(1) (relating to information made available on Internet and electronic notification), except that the individual shall not be required to receive counseling unless required to do so by the other jurisdiction or by reason of court martial.

- 14 -

(ii) Except as provided in subparagraphs (i) and (iv), if the individual has been convicted or sentenced by a court or court martialed for an offense listed in section 9799.55(b) or an equivalent offense, the individual shall, notwithstanding section 9799.53,[14] be considered an offender and be subject to lifetime registration under section 9799.55(b). The individual shall also be subject to the provisions of this section and sections 9799.60[15] and 9799.63(c)(2).[16]

(iii) Except as provided in subparagraphs (i), (ii), (iv) and (v), if the individual has been convicted or sentenced by a court or court martialed for an offense listed in section 9799.55(a) or an equivalent offense, the individual shall be, notwithstanding section 9799.53, considered an offender and subject to registration under this subchapter. The individual shall also be subject to the provisions of this section and sections 9799.60 and 9799.63(c)(2). The

_____

[14] **See** 42 Pa.C.S. § 9799.53 (defining "offender" as "[s]ubject to section 9799.75 (relating to construction of subchapter), an individual required to register under section 9799.55(a), (b)(1) or (2) (relating to registration)").

The rules for construing Subchapter I contained in § [9799.]75 indicate that nothing in the subchapter may be understood to relieve an individual from the duty to register if the person committed a sexually violent offense here or elsewhere, regardless of whether the offense was designated as a sexually violent one, or if the person was required to register under a prior version of Megan's Law, or would have been so required had our Supreme Court not struck down the 2004 version in **Commonwealth v. Neiman**, 624 Pa. 53, 84 A.3d 603 (2013). **See** 42 Pa.C.S. § 9799.75(a).

**Crenshaw**, 306 A.3d at 390 n.11.

[15] This section relates to verification of residence. 42 Pa.C.S. § 9799.60.

[16] Subsection 9799.63(c)(2) pertains to information that is permitted to be disclosed regarding individuals. **See** 42 Pa.C.S. § 9799.63 (relating to information made available on the Internet and electronic notification).

individual shall be subject to this subchapter for a period of 10 years or for a period of time equal to the time for which the individual was required to register in the other jurisdiction or required to register by reason of court martial, whichever is greater, less any credit due to the individual as a result of prior compliance with registration requirements.

(iv) Except as provided in subparagraph (i) and notwithstanding subparagraph (v), if the individual is subject to active notification in the other jurisdiction or subject to active notification by reason of court martial, the individual shall, notwithstanding section 9799.53, be considered an offender and subject to this section and sections 9799.60, 9799.62 and 9799.63(c)(1). If the individual was convicted of or sentenced in the other jurisdiction or sentenced by court martial for an offense listed in section 9799.55(b) or an equivalent offense, the individual shall be subject to this subchapter for the individual's lifetime. If the individual was convicted of or sentenced in the other jurisdiction or sentenced by court martial for an offense listed in section 9799.55(a) or an equivalent offense, the individual shall be subject to this subchapter for a period of 10 years or for a period of time equal to the time for which the individual was required to register in the other jurisdiction or required to register by reason of court martial, whichever is greater, less any credit due to the individual as a result of prior compliance with registration requirements. Otherwise, the individual shall be subject to this subchapter for a period of time equal to the time for which the individual was required to register in the other jurisdiction or required to register by reason of court martial, less any credit due to the individual as a result of prior compliance with registration requirements.

(v) Except as provided in subparagraphs (i), (ii), (iii) and (iv), if the individual is subject to passive notification in the other jurisdiction or subject to passive notification by reason of court martial, the individual shall, notwithstanding section 9799.53, be considered an offender and subject to this section and

> sections 9799.60 and 9799.63(c)(2). The individual shall be subject to this subchapter for a period of time equal to the time for which the individual was required to register in the other jurisdiction or required to register by reason of court martial, less any credit due to the individual as a result of prior compliance with registration requirements.

42 Pa.C.S. § 9799.56(b)(4).[17]

The term "active notification" utilized in § 9799.56(b)(4)(i) and (iv) is

defined as follows:

> Notification in accordance with section 9799.62 (relating to other notification) or a process whereby law enforcement, pursuant to the laws of … another state … notifies persons in the community in which the individual resides, including a person identified in section 9799.62(b), of the residence, employment or school location of the individual.

42 Pa.C.S. § 9799.53. The term "passive notification" utilized in

section 9799.56(b)(4)(v) means:

> Notification in accordance with section 9799.63 (relating to information made available on Internet and electronic notification) or a process whereby persons, under the laws of … another state … are able to access information pertaining to an individual as a result of the individual having been convicted or sentenced by a court for an offense similar to an offense listed in section 9799.55 (relating to registration).

*Id.*

We discern nothing in the record to indicate that Munoz-Rodriguez was

classified in Maryland as a sexually violent predator or subject to active

---

[17] Subparagraphs (1) through (3) of subsection 9799.56(b) are reserved and are not yet substantive provisions.

notification there. Rather, his conviction obligated him to register in Maryland for life and resulted in his registration information being made available for public inspection. ***See*** Md. Code Ann., Crim. Proc. §§ 11-701(q)(2), 11-707(a)(4)(iii), 11-717 (pertaining to registration statements made available to public and listing registrants on the Internet); ***see also*** Petition to Withdraw as Counsel, 9/7/2023, Ex. B (Munoz-Rodriguez's Sex Offender Registration in Maryland designating his offense category as tier III and registration term as lifetime). Therefore, the only subparagraphs of section 9799.56(b)(4) that could arguably apply to Munoz-Rodriguez to impose a duty to register are subparagraphs (ii), (iii), and (v).

Subparagraphs (ii) and (iii) require a conviction outside of Pennsylvania of an offense equivalent to one enumerated in subsection 9799.55(a) or (b). Likewise, subparagraph (v), by statutory definition of the term "passive notification," requires the out-of-state offense for which the offender was convicted to be similar to an offense listed in section 9799.55. 42 Pa.C.S. §§ 9799.53, 9799.56(b)(4)(v); ***see also Crenshaw***, 306 A.3d at 391. Accordingly, unless the Maryland crime is equivalent or similar to an offense listed in section 9799.55, Munoz-Rodriguez does not have a duty to register under Subchapter I. ***See Crenshaw***, 306 A.3d at 391.

We therefore turn our attention to whether Munoz-Rodriguez's Maryland conviction of a sexual offense of the third degree is equivalent to an offense listed in section 9799.55, requiring him to register in Pennsylvania. In ***A.L.***

*v. Pennsylvania State Police*, 274 A.3d 1228 (Pa. 2022), our Supreme Court set forth the framework for conducting an offense similarity analysis under Subchapter H of SORNA.

The *A.L.* Court addressed whether sexual assault as defined under the Uniform Code of Military Justice is comparable to sexual assault as defined under the Pennsylvania Crimes Code so as to require lifetime registration as a sexual offender under Subchapter H. *A.L.*, 274 A.3d at 1230. While in the Navy, A.L. had sexual intercourse with an adult victim while her ability to consent was impaired by alcohol; he was convicted of sexual assault under military law. *Id.* at 1230. After his discharge from the Navy, A.L. moved to Pennsylvania and registered with the PSP as a sex offender. *Id.* The PSP determined the military offense was comparable to the offense of sexual assault in Pennsylvania, which is a tier III offense requiring lifetime registration. *Id.* at 1231.

Utilizing jurisprudence of our appellate courts and the United States Supreme Court in other contexts, our Supreme Court examined the use of an element comparison method to determine whether two offenses are comparable.[18] *Id.* at 1232-34; *see also Crenshaw*, 306 A.3d at 392-93.

_____

[18] The other contexts examined included an individual's disqualification from obtaining a commercial driver's license or possessing a firearm; the applicability of sentencing enhancements; and in relation to the Armed Career Criminal Act ("ACCA"), the imposition of "a sentence enhancement upon defendants convicted under federal law of being a felon in possession of a
*(Footnote Continued Next Page)*

Examining the process for determining whether a prior conviction can be a

basis for sentencing enhancement under the ACCA, our High Court explained:

> To evaluate whether a prior state conviction counts as an ACCA predicate, the [U.S.] Supreme Court compares the elements of the generic crime with the elements under state law, a method it refers to as the "categorical approach." *Taylor v. United States*, 495 U.S. 575[] (1990). The sentencing court does not focus on the particular facts underlying the predicate conviction as to do so could entail an "elaborate factfinding process" that would be impractical, including where the conviction was based on a guilty plea. *Id.* at 601[]. The Court has articulated three reasons for choosing this approach: Congress made the sentence enhancement to depend on "convictions" not actions; any effort at fact-finding for sentencing purposes would be problematic under the Sixth Amendment; and "daunting" difficulties and inequities would arise from a sentencing court's effort at belated fact-finding based on aged documents, especially when their content is subject to interpretation. *See Descamps* [*v. United States*], 570 U.S. [254,] 267-71 [2013]. [FN]3
>
>> [FN]3 In terms of the inequities, the [U.S. Supreme] Court pointed out that at the criminal proceedings in state court, the defendant may have little incentive to correct errors that do not really matter in that context and may have good reason not to, as extraneous facts and arguments may confuse the jury. Similarly, during a plea hearing, "the defendant may not wish to irk the prosecutor or court by squabbling about superfluous factual allegations." *Id.* at 270[]. It would thus be unfair for a sentencing court, later on, to use uncorrected (but erroneous) statements by the prosecutor or judge as proof specific actions were taken in committing the offense. *See id.* at 269-70[] (explaining the only facts the ACCA sentencing court can be sure the jury found are those constituting elements of the offense); *accord Mathis v. United States*, 579 U.S. 500, 512-13[] (2016).

firearm, where the defendant has three prior convictions for certain violent felonies" that usually occurred at the state level. *See A.L.*, 274 A.3d at 1232-34.

With that said, the [U.S.] Supreme Court has also consistently recognized that some state offenses are defined by a "divisible" statute, meaning the statute gives alternative elements, usually phrased in the disjunctive, that could make up the offense. In such cases, the Court has approved what it calls the "modified categorical approach," allowing the sentencing court to "consult a limited class of documents" from the conviction record, such as indictments and jury instructions, to determine the alternative element, and thus, the alternative crime, of which the defendant was previously found guilty. *Id.* at 257[]; *see also Johnson v. United States*, 559 U.S. 133, 144[] (2010) (indicating the court can consider charging documents, plea agreements, transcripts of plea colloquies, jury instructions, verdict slips, and findings of fact and conclusions of law from a bench trial); *Nijhawan v. Holder*, 557 U.S. 29, 35[] (2009). Assuming the sentencing court can, in fact, determine from that limited set of documents the specific alternative crime of which the defendant was convicted, the court "can then do what the categorical approach demands: compare the elements of the crime of conviction (including the alternative element used in the case) with the elements of the generic crime." *Descamps*, 570 U.S. at 257[]. While this was first characterized as an "exception" to the categorical approach, *Shepard v. United States*, 544 U.S. 13, 17[] (2005), the Court later clarified it was not an exception but a "tool" because it "retains the categorical approach's central feature: a focus on the elements, rather than the facts, of a crime." *Descamps*, 570 U.S. at 263[].[FN]4

> [FN]4 The [U.S.] Supreme Court has been careful to distinguish alternative *elements* – which in reality define different crimes – from alternative *means* of satisfying a single element. It has clarified that the modified categorical approach is not applicable to different means, as in that instance the extra-jurisdictional offense sweeps more broadly than the generic one. As well, considering the means by which an element of the state offense was committed leads to the inequities described above. *See supra* note 3. *See generally Mathis*, 579 U.S. at 513[] (recognizing the modified categorical approach serves only "as a tool to identify the elements of the crime of conviction when a statute's disjunctive phrasing renders one (or more) of them opaque").

*A.L.*, 274 A.3d at 1234-35 (emphasis in original).

The **A.L.** Court adopted this approach, holding "the categorical approach as described by the [United States] Supreme Court is to be applied when ascertaining whether a prior extra-jurisdictional offense is 'comparable' or 'equivalent' under SORNA Subchapter H."[19] **A.L.**, 274 A.3d at 1238. Our High Court explained that this approach serves to "remove guesswork, inconsistency, and ad hoc agency decision-making, [] promote the legislative focus on prior convictions rather than prior actions," and also "foreclose the type of 'daunting' difficulties and potential unfairness the Supreme Court pointed out would arise if a reviewing entity years later were to sift through voluminous aged documents to ascertain exactly what the SORNA registrant did (as opposed to what he was convicted of)." **Id.** at 1237-38.

Applying the categorical approach to the crimes in question in **A.L.**, scienter was the only comparative element at issue between the two sexual assault offenses. Under the military offense, the mens rea element requires the victim's impaired condition be "known or reasonably should be known" by the defendant, whereas under the Pennsylvania statute, no scienter is specified as to the victim's non-consent, thereby defaulting to at least

---

[19] **A.L.** observed that our General Assembly has "express[ed] the concept of similarity" in a variety of statutes, including Subchapter H of SORNA, using "different adjectives such as 'equivalent,' 'similar,' 'essentially similar,' 'comparable,' and 'substantially the same'" without defining those terms. **A.L.**, 274 A.3d at 1236. Utilizing tools of statutory interpretation, the Court concluded that the terms at issue there—"equivalent" and "comparable"— were used interchangeably. **See id.** at 1236-38.

recklessness. *Id.* at 1230-31 & n.2 (citing 18 Pa.C.S. § 302(c) ("When the culpability sufficient to establish a material element of an offense is not prescribed by law, such element is established if a person acts intentionally, knowingly or recklessly with respect thereto.")).

The *A.L.* Court found that the use of the word "or" in the mens rea element of the military offense (the victim's impaired condition "is known or reasonably should be known" by the defendant) "is divisible in that it allows for culpability if the defendant either knew of the victim's impaired state or reasonably should have known of it." *Id.* at 1239. In other words, our High Court concluded the military statute "effectively defines two crimes, one when the victim's impairment is known to the actor, and the other when that impairment reasonably should be known but is not." *Id.* at 1239-40. However, because the military tribunal did not make any finding regarding A.L.'s level of knowledge as to his victim's impaired condition, "PSP lacked a valid foundation to discern which of the two [crimes] formed the basis for the military panel's finding of guilt." *Id.* Consequently, the *A.L.* Court concluded that the military offense was not comparable to the Pennsylvania offense because the military offense required a broader mens rea than Pennsylvania's statutory element of recklessness or above. *Id.* at 1240.

Of particular relevance here is the *A.L.* Court's reliance on *Mathis* and its holding that the modified categorical approach permits an evaluation solely of the elements of the prior conviction and not the means of satisfying those

elements. ***Mathis*** involved the imposition of a sentence enhancement under the ACCA: where a defendant convicted of being a felon in possession of a firearm also has three prior convictions for a violent felony, including burglary, he is subject to a fifteen-year mandatory minimum sentence. ***Mathis***, 579 U.S. at 503. Mathis pled guilty to being a felon in possession of a firearm and, because he had five prior burglary convictions under Iowa law, the government requested the sentence enhancement. ***Id.*** at 507. The United States Supreme Court reiterated its application of the modified categorical approach as part of the categorial approach, comparing the elements of Iowa's burglary statute to those of the generic burglary offense under the ACCA to determine whether a prior conviction is a predicate offense under the ACCA. ***Id.*** at 504-06. The ***Mathis*** Court found that the Iowa crime involved "a different kind of alternatively phrased law: not one that lists multiple elements disjunctively, but instead one that enumerates various factual means of committing a single element." ***Id.*** at 506 (citation omitted). Specifically, under the Iowa statute, burglary required the unlawful entry into any "building, structure, [or] land, water, or air vehicle"; the generic burglary offense required unlawful entry into a "building or other structure." ***Id.*** at 503-04, 507. The High Court noted that under Iowa law, that broader list of places where a burglary could occur are not alternative elements but rather constitute "alternative ways of satisfying a single locational element." ***Id.*** at 507.

The United States Supreme Court ultimately concluded that because the elements of Iowa's burglary statute were broader than those of the generic burglary statute, Mathis' prior convictions could not give rise to the ACCA's sentence enhancement. *Id.* at 520. Examining the decision of the Eighth Circuit Court of Appeals below, the *Mathis* Court observed that the court held that although "structures" and "vehicles" under the Iowa statute were not separate elements, the sentencing court could still use the modified categorical approach because the record showed that Mathis had burgled structures. *Id.* at 508. In reversing, the High Court explained: "How a given defendant actually perpetrated the crime—what [it has] referred to as the 'underlying brute facts or means' of commission—makes no difference; even if his conduct fits within the generic offense, the mismatch of elements saves the defendant from an ACCA sentence." *Id.* at 509 (citation omitted). The Court recognized that the

> rule can seem counterintuitive. In some cases, a sentencing judge knows (or can easily discover) that the defendant carried out a "real" burglary, even though the crime of conviction also extends to other conduct. No matter. Under ACCA, it is impermissible for a particular crime to sometimes count towards enhancement and sometimes not, depending on the facts of the case. Accordingly, a sentencing judge may look only to the elements of the offense, not to the facts of the defendant's conduct.

*Id.* at 510 (citations, brackets, and some quotation marks omitted). It reasoned, however, that "a statute's listing of disjunctive means does nothing to mitigate the possible unfairness of basing an increased penalty on something not legally necessary to a prior conviction." *Id.* at 513.

*Mathis* plainly instructed that the "first task for a sentencing court faced with an alternatively phrased statute is thus to determine whether its listed items are elements or means." *Id.* at 517. It emphasized that "the modified approach serves—and only serves—as a tool to identify the elements of the crime of conviction when a statute's disjunctive phrasing renders one (or more) of them opaque" and "is not to be repurposed as a technique for discovering whether a defendant's prior conviction, even though for a too-broad crime, rested on facts (or otherwise said, involved means) that also could have satisfied the elements of the generic offense." *Id.* at 513-14 (citation omitted).

We have since adopted the categorical approach for assessing similarity under Subchapter I of SORNA. In *Crenshaw*, we reasoned that because "the term 'similar' is likewise not defined in Subchapter I, the same risks of inconsistency and guesswork are plainly implicated [thereunder] as those that compelled the *A.L.* Court to adopt the categorical approach in applying Subchapter H." *Crenshaw*, 306 A.3d at 394.

Instantly, the Maryland statute to which Munoz-Rodriguez pled guilty proscribes a sexual offense of the third degree, providing, in pertinent part, that a person may not "engage in sexual contact with another if the victim is under the age of 14 years, and the person performing the sexual contact is at least 4 years older than the victim." Md. Code Ann., Crim. Law § 3-307(a)(3).

At the time Munoz-Rodriguez was convicted, sexual contact was defined as follows:

> (f)(1) "Sexual contact", as used in §§ 3-307 and 3-308 of this subtitle, means an intentional touching of the victim's or actor's genital, anal, or other intimate area for sexual arousal or gratification, or for the abuse of either party.
>
> (2) "Sexual contact" includes an act:
>
> (i) in which a part of an individual's body, except the penis, mouth, or tongue, penetrates, however slightly, into another individual's genital opening or anus; and
>
> (ii) that can reasonably be construed to be for sexual arousal or gratification, or for the abuse of either party.
>
> (3) "Sexual contact" does not include:
>
> (i) a common expression of familial or friendly affection; or
>
> (ii) an act for an accepted medical purpose.

Md. Code Ann., Crim. Law § 3-301(f) (effective to September 30, 2007).[20]

_____

[20] The definition of "sexual contact" has since been changed. It is now defined as follows:

> (e)(1) "Sexual contact", as used in §§ 3-307, 3-308, and 3-314 of this subtitle, means an intentional touching of the victim's or actor's genital, anal, or other intimate area for sexual arousal or gratification, or for the abuse of either party.
>
> (2) "Sexual contact" does not include:
>
> (i) a common expression of familial or friendly affection; or
>
> (ii) an act for an accepted medical purpose.

Md. Code Ann., Crim. Law § 3-301(e).

The Commonwealth and PCRA counsel represented that Munoz-Rodriguez is subject to lifetime registration under SORNA based upon the PSP's determination that his Maryland offense was similar to aggravated indecent assault which, as noted above, is an offense enumerated under section 9799.55(b). *See Munoz-Rodriguez*, 285 MDA 2022, 2023 WL 2581851, at *1; *see also generally* Munoz-Rodriguez's Brief, Commonwealth's Brief. Munoz-Rodriguez contests this position, but contends instead that his Maryland conviction is similar to subsection (a)(7) of Pennsylvania's indecent assault statute which, as noted above, is an offense enumerated under section 9799.55(a). *See* Munoz-Rodriguez's Brief at 6, 8, 16-18, 27, 29-32, 34, 37; *see also* PCRA Petition, 8/9/2021, at 5, ¶¶ 25, 28, 32.

The PCRA court weighed the question of whether Munoz-Rodriguez's Maryland conviction was similar to Pennsylvania's crime of aggravated indecent assault or indecent assault. It ultimately concluded that because Munoz-Rodriguez pled guilty to digitally penetrating a twelve-year-old victim's vagina, the PSP correctly determined the Maryland offense was similar to Pennsylvania's aggravated indecent assault, obligating him to register for life under Subchapter I of SORNA. *See* PCRA Court Opinion, 10/20/2023, at 13-14.

We first examine Pennsylvania's aggravated indecent assault statute, which provides, in relevant part, as follows:

**(a) Offenses defined.--**Except as provided in sections 3121 (relating to rape), 3122.1 (relating to statutory sexual assault), 3123 (relating to involuntary deviate sexual intercourse) and 3124.1 (relating to sexual assault), a person who engages in penetration, however slight, of the genitals or anus of a complainant with a part of the person's body for any purpose other than good faith medical, hygienic or law enforcement procedures commits aggravated indecent assault if:

*    *    *

(8) the complainant is less than 16 years of age and the person is four or more years older than the complainant and the complainant and the person are not married to each other.

18 Pa.C.S. § 3125(a)(8).

Beginning with the first element—the age of the victim—a third-degree sexual offense in Maryland can be established if the victim is under fourteen years old and the actor is at least four years older, while in Pennsylvania, under subsection (a)(8), the complainant has to be under sixteen years old with the actor at least four years older. Accordingly, if a person is convicted of subsection (a)(3) of third-degree sexual offense in Maryland, the age element will always be met for subsection (a)(8) of aggravated indecent assault in Pennsylvania.

Examining the purpose element, subsection (a)(3) of third-degree sexual offense in Maryland must be done for sexual arousal, gratification, or abuse, with exceptions for medical purposes and common expressions of familial or friendly affection. Aggravated indecent assault in Pennsylvania is done for any purpose except medical, hygienic, or law enforcement

procedures. The purpose element is therefore narrower in Maryland, resulting in the third-degree sexual offense conviction always meeting the purpose element of aggravated indecent assault.

The mens rea element is also narrower in the Maryland statute. **Compare** Md. Code Ann., Crim. Law §§ 3-301(f) (effective to September 30, 2007) (defining sexual contact and requiring it to be intentional), 3-307(a)(3) (requiring sexual contact), **with** 18 Pa.C.S. §§ 302(c) ("When the culpability sufficient to establish a material element of an offense is not prescribed by law, such element is established if a person acts intentionally, knowingly or recklessly with respect thereto."), 3125.

Lastly, turning to the prohibited conduct—the physical contact with the victim—a third-degree sexual offense conviction in Maryland requires "an intentional touching" of the victim's or defendant's genital, anal, or other intimate area, whereas aggravated indecent assault in Pennsylvania requires "penetration, however slight," of the victim's genitals or anus with a part of the actor's body. Although the version of the Maryland statute defining "sexual contact" under which Munoz-Rodriguez was convicted specifically stated that the crime includes penetration, it was not a requisite element of the crime as it is under Pennsylvania law.[21] Thus, the physical contact element

_____

[21] As this Court observed in Munoz-Rodriguez's first appeal, Attorney Hoke and the Commonwealth addressed the similarity of the Maryland and Pennsylvania offenses based on the facts of Munoz-Rodriguez's conviction. *(Footnote Continued Next Page)*

is broader in Maryland and a person convicted of subsection (a)(3) of third-degree sexual offense does not necessarily meet that element of aggravated indecent assault in Pennsylvania because penetration is not required in Maryland, it is simply a means by which a person can commit the offense. *See Mathis*, 579 U.S. at 513-14; *A.L.*, 274 A.3d at 1235 n.4. Further, the Maryland statute is broader in that an actor and victim can be married to each; in Pennsylvania, if they are married, the actor could not be convicted of aggravated indecent assault.

Although the PCRA court employed an element comparison test for similarity, it impermissibly relied on Munoz-Rodriguez's admission at his guilty plea hearing that he digitally penetrated the victim's vagina to find his conviction similar to aggravated indecent assault in Pennsylvania. *See* PCRA Court Opinion, 10/20/2023, at 13. We agree that if we could employ such an analysis, the factual basis for Munoz-Rodriguez's guilty plea would meet all elements of the offense of aggravated indecent assault in Pennsylvania. From the notes of testimony of his guilty plea hearing, we know that Munoz-Rodriguez digitally penetrated a twelve-year-old victim's vagina, which would satisfy the penetration requirement of aggravated assault statute. *See Turner/Finley* No-Merit Letter, 9/7/2023, Ex. A (N.T. (Guilty Plea Hearing),

---

*See Turner/Finley* No-Merit Letter, 9/7/2023, ¶¶ 19(1)(k)-(p); Commonwealth's Brief at 11-18; *see also Munoz-Rodriguez*, 285 MDA 2022, 2023 WL 2581851, at *4 n.4.

8/27/2003). The law is clear, however, that we are prohibited from looking at the means by which Munoz-Rodriguez perpetrated the crime in Maryland. *See A.L.*, 274 A.3d at 1234-35, nn. 3, 4; *see also Mathis*, 579 U.S. at 518 (stating that "if a statutory list is drafted to offer 'illustrative examples,' then it includes only a crime's means of commission") (citations omitted).

Based upon the foregoing, we conclude that Munoz-Rodriguez's conviction of third-degree sexual offense is not equivalent or similar to a conviction of aggravated indecent assault for purposes of Subchapter I of SORNA. *See Crenshaw*, 306 A.3d at 397; *accord A.L.*, 274 A.3d at 1238-40. As a result, Munoz-Rodriguez was not subject to lifetime registration requirements pursuant to sections 9799.54(a)(4), 9799.55(b) and 9799.56(b)(4)(ii).

This does not end our inquiry. As stated throughout this decision, Munoz-Rodriguez repeatedly asserted both below and before this Court that although his Maryland conviction is not similar to Pennsylvania's aggravated assault, it is similar to Pennsylvania's indecent assault statute under subsection (a)(7). *See* Munoz-Rodriguez's Brief at 6, 8, 16-18, 27, 29-32, 34, 37; *see also* PCRA Petition, 8/9/2021, at 5, ¶¶ 25, 28, 32. The relevant portion of our indecent assault statute provides as follows:

> **(a) Offense defined.--**A person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and:

* * *

(7) the complainant is less than 13 years of age[.]

18 Pa.C.S. § 3126(a)(7).

Indecent contact is defined as "[a]ny touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in any person." 18 Pa.C.S. § 3101. Intimate parts are any "'body part that is personal and private, and which the person ordinarily allows to be touched only by people with whom the person has a close personal relationship, and one which is commonly associated with sexual relations or intimacy.'" **Crenshaw**, 306 A.3d at 395 (quoting **Commonwealth v. Gamby**, 283 A.3d 298, 313-14 (Pa. 2022) (holding the neck is an intimate body part)).

As stated above, "Subchapter I requires registration following conviction for committing an indecent assault, or attempting to do so, only if it is graded as a first-degree misdemeanor or higher." **Id.** (citing 42 Pa.C.S. § 9799.55(a)(1)(i)(A)). The indecent assault statute is graded as follows:

> **(b) Grading.--**Indecent assault shall be graded as follows:
>
> > (1) An offense under [18 Pa.C.S. § 3126](a)(1) or (8) is a misdemeanor of the second degree.
> >
> > . . .
> >
> > (3) An offense under [18 Pa.C.S. § 3126](a)(7) is a misdemeanor of the first degree unless any of the following apply, in which case it is a felony of the third degree:

> (i) It is a second or subsequent offense.
>
> (ii) There has been a course of conduct of indecent assault by the person.
>
> (iii) The indecent assault was committed by touching the complainant's sexual or intimate parts with sexual or intimate parts of the person.
>
> (iv) The indecent assault is committed by touching the person's sexual or intimate parts with the complainant's sexual or intimate parts.

18 Pa.C.S. § 3126(b)(1), (3).

Therefore, as this Court observed in **Crenshaw**, "for indecent assault to trigger Subchapter I registration, not only must there be physical touching of intimate parts for purposes of arousing sexual desire, but the complainant also had to be under the age of thirteen."  306 A.3d at 396; **see also** 18 Pa.C.S. § 3126(a)(7), (b)(3).  Put another way, we only look to subsection (a)(7) of our indecent assault statute, graded at a minimum as a first-degree misdemeanor, to determine whether Munoz-Rodriguez's Maryland conviction is equivalent or similar thereto, triggering registration requirements under Subchapter I of SORNA.

We therefore employ the categorical approach to determine if Munoz-Rodriguez's Maryland conviction is similar to a conviction under subsection (a)(7).  Beginning with the purpose element, the Maryland statute requires the offense be done for sexual arousal or gratification, or the abuse of either party (with exceptions for medical purposes and common expressions of familial or friendly affection), whereas the Pennsylvania statute requires

arousing sexual desire in any person. Accordingly, the Maryland statute is narrower as to this element.

For the element of physical contact, the statutes both require touching of sexual or intimate parts, but Maryland is narrower because Pennsylvania also includes the actor intentionally causing the complainant to come into contact with seminal fluid, urine, or feces.

The mens rea element is narrower in the Maryland statute. **Compare** Md. Code Ann., Crim. Law §§ 3-301(f) (effective to September 30, 2007), 3-307(a)(3), **with** 18 Pa.C.S. §§ 302(c), 3126(a).

However, with respect to age, a third-degree sexual offense in Maryland can be established if the victim is under fourteen and the actor is at least four years older, whereas in Pennsylvania, subsection (a)(7) requires the complainant be under thirteen. The Maryland statute is therefore broader in this respect. **See Crenshaw**, 306 A.3d at 397 (holding that the North Carolina offense at issue (taking indecent liberties with children) was broader than the Pennsylvania offense of indecent assault and thus, not similar for purposes of Subchapter I of SORNA based, in part, on the offenses' different age requirements).

Based upon the foregoing, we conclude that Munoz-Rodriguez's Maryland conviction of third-degree sexual offense is not equivalent to a conviction for indecent assault for purposes of Subchapter I of SORNA. **See Crenshaw**, 306 A.3d at 397; **accord A.L.**, 274 A.3d at 1238-40. As a result,

Munoz-Rodriguez was not subject to any registration requirements pursuant to sections 9799.54(a)(4); 9799.55(a) and (a.1); and 9799.56(b)(4)(iii) or (v) of SORNA.[22] Consequently, in order to "remove guesswork, inconsistency, and ad hoc agency decision-making," "promote the legislative focus on prior convictions rather than prior actions," and foreclose difficulties and potential unfairness in looking to the facts of a defendant's conduct, we are constrained to reverse the order of the PCRA court, vacate Munoz-Rodriguez's judgment of sentence, reverse his conviction, and order him discharged. *See A.L.*, 274

---

[22]     While Munoz-Rodriguz purports to concede that his Maryland conviction is similar to Pennsylvania's indecent assault statute, we are prohibited from accepting his averment as a judicial admission because it is a conclusion of law. *See John B. Conomos, Inc. v. Sun Co., Inc. (R&M)*, 831 A.2d 696, 713 (Pa. Super. 2003) ("Judicial admissions are limited in scope to factual matters otherwise requiring evidentiary proof, and are exclusive of legal theories and conclusions of law.") (citation omitted).

We nonetheless observe, however, that, contrary to the arguments advanced by Munoz-Rodriguez and the Commonwealth, as well as the statements made by the PCRA court, if the Maryland conviction was similar to indecent assault under subsection (a)(7), Munoz-Rodriguez would be obligated to register for life under Subchapter I of SORNA. *See* Munoz-Rodriguez's Brief at 6, 32, 37; Commonwealth's Brief at 3, 11, 16; PCRA Court Opinion, 10/20/2023, at 10 ("If the sexual offense to which [Munoz-Rodriguez] entered a plea of guilty was similar to indecent assault under Pennsylvania law, 18 Pa.C.S. § 3126, [Munoz-Rodriguez's] registration period was ten years.")).  Because the similar conviction under Pennsylvania law required Munoz-Rodriguez to register for life in Maryland, sections 9799.54(a)(4), 9799.55(a.1), and 9799.56(b)(4)(iii) or (v) would have extended his duration of registration to the lifetime period imposed by Maryland law.  Consequently, Munoz-Rodriguez would have had a lifetime obligation to register under Subchapter I of SORNA and his conviction pursuant to 18 Pa.C.S. § 4915.2(a)(2) would be sound.

A.3d at 1237-38; *see also Crenshaw*, 306 A.3d at 397 (vacating appellants' judgments of sentence for failing to register pursuant to Subchapter I of SORNA where appellants' North Carolina convictions for taking indecent liberties with children were not similar to the offense of indecent assault in Pennsylvania for purposes of Subchapter I of SORNA and thus, they had no obligation to register and could not validly be convicted under 18 Pa.C.S. § 4915.2 for failing to do so).[23]

Order reversed. Judgment of sentence vacated. Conviction reversed. Munoz-Rodriguez discharged. Jurisdiction relinquished.

Judgment Entered.

_____

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/30/2024

_____

[23] In his second issue, Munoz-Rodriguez asks us to review the PCRA court's grant of Attorney Hoke's petition to withdraw pursuant to *Turner*/*Finley*. Notably, he does not argue that Attorney Hoke did not comply with the technical requirements of *Turner*/*Finley*—in fact, he agrees that she satisfied them. *See* Munoz-Rodriguez's Brief at 42. Rather, in his brief, Munoz-Rodriguez takes issue with the effectiveness of plea and PCRA counsel, attacking their purported failures to properly analyze the elements of Maryland conviction as compared to Pennsylvania's aggravated indecent assault statute. *Id.* at 36-45. In light of our disposition, we need not address Munoz-Rodriguez's second issue.